1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
                               AT TACOMA
7

    JAMIE D. DUNBAR,
8
                           Plaintiff,          Case No. C16-5918-JCC
9
           v.                                  **ORDER REVERSING AND
10                                             REMANDING CASE FOR
    NANCY A. BERRYHILL, Acting                 FURTHER ADMINISTRATIVE
11  Commissioner of Social Security,           PROCEEDINGS**

12                         Defendant.

13         Jamie D. Dunbar seeks review of the denial of her application for Supplemental Security

14  Income and Disability Insurance Benefits.  Ms. Dunbar contends the ALJ erred in: (1) evaluating

15  the medical evidence; (2) evaluating her own testimony; and, (3) evaluating the lay evidence.

16  Dkt. 11 at 2.  Ms. Dunbar contends these errors resulted in a residual functional capacity (RFC)

17  determination, excluding the impact of substance abuse, which failed to account for all of her

18  limitations and that this, in turn, resulted in an erroneous step five finding.  *Id.*  As relief, Ms.

19  Dunbar requests that this case be remanded for an award of benefits or, alternatively, for further

20  administrative proceedings.  *Id.* at 19.  As discussed below, the Court **REVERSES** the

21  Commissioner's final decision and **REMANDS** the matter for further administrative proceedings

22  under sentence four of 42 U.S.C. § 405(g).

23                               **BACKGROUND**

    ORDER REVERSING AND REMANDING
    CASE FOR FURTHER ADMINISTRATIVE
    PROCEEDINGS - 1

1    On January 27, 2011, Ms. Dunbar protectively filed for benefits, alleging disability as of

2    October 31, 2007.  Tr. 12.  Ms. Dunbar's applications were denied initially and on

3    reconsideration.  Tr. 217-47.  The ALJ conducted a hearing on September 6, 2012, and on

4    November 1, 2012, issued a decision finding Ms. Dunbar not disabled.  Tr. 187-208.  Ms.

5    Dunbar requested review and the Appeals Council remanded the matter for a new hearing.  Tr.

6    209-13.  The ALJ conducted another hearing on February 5, 2015, and on April 29, 2015, issued

7    a decision again finding Ms. Dunbar not disabled.  Tr. 12-29.

8                              **DRUG ABUSE AND ALOCOHOLISM ANALYSIS**

9            If drug abuse and alcoholism (DAA) is a contributing factor material to the determination

10   of disability, a claimant cannot be considered disabled for purposes of awarding benefits.  42

11   U.S.C. § 1382c(a)(3)(J).  Thus when DAA is present the ALJ must follow a specific analysis to

12   determine whether it is a contributing factor material to the determination of disability.  *See* 20

13   C.F.R. §§ 404.1535, 416.935; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

14   First, the ALJ must complete the five-step disability analysis without separating out the effects of

15   DAA. [1]  *See Bustamante*, 262 F.3d at 956 (remanding "with instructions that the ALJ proceed

16   with step three (and four and five, if necessary) of the disability determination without

17   attempting to separate out the impact of … alcohol abuse.").  If the ALJ finds the claimant

18   disabled without separating out the impacts of DAA, the ALJ must then perform the sequential

19   evaluation process a second time, separating out the impact of the DAA to determine whether

20   she would remain disabled if she stopped using drugs or alcohol.  *See id.*  If the ALJ finds the

21   claimant's remaining limitations are disabling after completing that second evaluation, then

22   DAA is not a contributing factor material to the determination of disability and the claimant is

23

[1] 20 C.F.R. §§ 404.1520, 416.920.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

disabled.  20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).  Even where a claimant's DAA

causes her other impairment, if the other impairment is irreversible or would not improve to the

point of nondisability in the absence of DAA, DAA is not material to the disability.  Social

Security Ruling ("SSR") 13-2p.  On the other hand, if, after the second evaluation, the ALJ

determines a claimant's remaining limitations would not be disabling, the ALJ must find that the

claimant's DAA is a contributing factor material to the determination of disability and the

claimant is not disabled.  20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).  "The claimant bears

the burden of proving that drug or alcohol addiction is not a contributing factor material to [her]

disability."  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, the ALJ found, considering all of Ms.

Dunbar's impairments *including substance abuse*:

**Step one:**  Ms. Dunbar has not engaged in substantial gainful activity since October 31, 2007, the alleged onset date.

**Step two:**  Ms. Dunbar has the following severe impairments: substance abuse/dependence, bipolar disorder, posttraumatic stress disorder (PTSD), anxiety disorder, obesity, and lumbar degenerative disc disease.

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:**  Ms. Dunbar can perform light work with some exceptions.  She can frequently balance, occasionally stoop, kneel, and crouch, and cannot crawl or climb ramps, stairs, ladders, ropes, or scaffolds.  She must avoid concentrated exposure to extreme cold, vibrations, and hazards.  She can perform simple, routine tasks and follow short, simple instructions, do work that needs little or no judgment, and perform simple duties that can be learned on the job in a short period.  She requires a work environment with minimal supervisor contact.  (Minimal contact does not preclude all contact, rather it means contact does not occur regularly.  Minimal contact also does not preclude simple and superficial exchanges and it doesn't preclude being in

---

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

proximity to the supervisor.). She can work in proximity to co-workers, but not in a cooperative or team effort, and requires a work environment that has no more than superficial interactions with co-workers. She also requires a work environment that is predictable and with few work setting changes and requires a work environment without public contact. She is unable to maintain regular attendance and to be punctual within customary tolerances secondary to mood instability caused by substance abuse.

**Step four:** Ms. Dunbar cannot perform past relevant work.

**Step five:** As there are no jobs that exist in significant numbers in the national economy that Ms. Dunbar can perform, she is disabled.

Considering Ms. Dunbar's impairments *in the absence of substance abuse*, the ALJ found:

**Step one:** Ms. Dunbar has not engaged in substantial gainful activity since October 31, 2007, the alleged onset date.

**Step two:** If Ms. Dunbar stopped her substance use, the remaining limitations would cause more than a minimal impact on her ability to perform basic work activities; therefore she would continue to have a severe impairment or combination of impairments.

**Step three:** Ms. Dunbar would not have an impairment or combination of impairments that meets or equals a listed impairment.

**RFC:** Ms. Dunbar's RFC would remain the same excluding the limitation that she would be unable to maintain regular attendance and be punctual within customary tolerances secondary to mood instability caused by substance abuse.

**Step four:** Ms. Dunbar could not perform past relevant work.

**Step five:** As there are a significant number of jobs in the national economy that Ms. Dunbar could perform, she would not be disabled.

The ALJ concluded that substance abuse disorder was a contributing factor material to the

determination of disability because Ms. Dunbar would not be disabled in the absence of

substance use. Tr. 12-29. The Appeals Council denied Ms. Dunbar's request for review of the

ALJ's April 29, 2015 decision, making that decision the Commissioner's final decision. Tr. 1-

6.[3]

# DISCUSSION

**A.     Medical Evidence**

The ALJ must provide "clear and convincing reasons" to reject the uncontradicted opinion of a treating or examining doctor. *Lester v. Chater*, 81 F.3d 821, 830, 831 (9th Cir. 1996). When contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.*

**1.     Daniel Niems, Psy.D.**

Dr. Neims performed three separate psychological evaluations of Ms. Dunbar in 2011, 2013 and in 2015. Tr. 575-86, 759-74, 821-35. Dr. Neims listed diagnoses of bipolar disorder, PTSD, anxiety disorder NOS, cannabis abuse, methamphetamine abuse in reported long term remission, and borderline personality disorder. *Id.* In the 2011 evaluation, Dr. Neims opined that, due to her mental health symptoms, Ms. Dunbar would be moderately impaired in various areas, would be severely impaired in her ability to communicate and perform effectively in a work setting with limited public contact and in her ability to maintain appropriate behavior in a work setting, and would be markedly limited in her ability to communicate and perform effectively in a work setting with public contact. Tr. 577. In the 2013 and 2015 evaluations, Dr. Neims opined that, due to her mental health symptoms, Ms. Dunbar would be moderately impaired in various areas, would be severely impaired in her ability to communicate and perform effectively in a work setting, and would be markedly impaired in her ability to ask simple questions or request assistance, complete a normal work day and work week without interruptions from psychologically based symptoms, and maintain appropriate behavior in a

---

[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

work setting. Tr. 761, 823. In all three evaluations Dr. Neims opined that Ms. Dunbar's mental health symptoms were primary and would persist with or without marijuana abuse. *Id.* In his 2013 and 2015 evaluations Dr. Neims also opined that Ms. Dunbar's substance abuse issues were not material but that they likely represented a "maladaptive effort to cope with issues of anxious arousal and dysphoria." Tr. 761, 823. In his decision, the ALJ gives some weight to the 2011 and 2013 opinions as evidence of Ms. Dunbar's functioning including the impact of substance abuse but discounts the opinions in evaluating her functioning without the impact of substance abuse. Tr. 19-20, 27. The ALJ did not consider the 2015 opinion because it post-dated the ALJ's decision and was submitted for the first time to the Appeals Council in requesting review of that decision. Tr. 1-6.

The ALJ discounts Dr. Neims' 2011 and 2013 opinions on the grounds that they were performed during periods when Ms. Dunbar was using marijuana and that she was not entirely honest with Dr. Neims regarding her drug use. Tr. 19-20, 27. Substantial evidence does not support this reason for discounting Dr. Neims' opinions. With respect to the 2011 evaluation, Ms. Dunbar reported she was using marijuana regularly. Tr. 575-86. Dr. Neims considered that fact in his evaluation and still opined that Ms. Dunbar's mental health problems were primary and would persist with or without marijuana abuse. *Id.* With respect to the 2013 evaluation, the ALJ notes that Ms. Dunbar reported using marijuana only two times a month but that this was inconsistent with recent treatment records which indicate she was using more. Tr. 19. In support of this finding the ALJ points to record from three months prior to Dr. Neims' 2013 evaluation in which Ms. Dunbar reported using marijuana four times a week. *Id.*; Tr. 720-21. However, evidence of greater use three months prior to Dr. Neims' evaluation does not substantially undermine Ms. Dunbar's report that, at the time of Dr. Neims' examination, she was only using

twice a month. It is entirely possible that in the intervening months Ms. Dunbar reduced the frequency of her marijuana use. In fact, the record appears to indicate that the frequency of Ms. Dunbar's marijuana use fluctuated a great deal during the subject period. Accordingly, the ALJ's finding is at best speculative and is not sufficient to discount Dr. Neims' opinion.

The ALJ also notes that Ms. Dunbar failed to disclose other *recent* drug use, including the use of opioids. Tr. 19. However, the only mention of opioid use in the record the ALJ identifies is from October 2012, nearly two years after Dr. Neims' 2011 opinion and eight months prior to Dr. Neims' 2013 opinion. Tr. 19, 778. At that time Ms. Dunbar reported to her provider that she had used opioids three to four times in the past twelve months. Tr. 778. In some circumstances, an ALJ may discount a medical opinion where the doctor is unaware of a substance abuse issue that may have impacted the evaluation or clouded the diagnostic picture. *See, e.g., Conn v. Colvin*, 2015 WL 5794338 (W.D. Wash., Oct. 5, 2015) (ALJ properly discounted doctor's opinion in part on the grounds that doctor was unaware of claimant's ongoing substance abuse). However, here, there is no indication of recent or ongoing opioid use prior to Dr. Neims' 2011 opinion or in the weeks or months leading up to Dr. Neims' 2013 opinion such that Ms. Dunbar's failure to report that past use would be likely to impact the evaluation or cloud the diagnostic picture regarding her mental health impairments. Under the circumstances, the fact that Ms. Dunbar neglected to report she had used opioids on a few occasions eight to twenty months prior to Dr. Neims' 2013 opinion, with no indication of ongoing or recent use, does not substantially undermine that opinion.

The ALJ also discounts Dr. Neims' 2013 opinion on the grounds that Ms. Dunbar misrepresented her experience with mental health treatment. Tr. 19. Specifically, the ALJ notes that Ms. Dunbar told Dr. Neims she ceased mental health treatment because her providers

wanted her to complete chemical dependency treatment first but that the treatment notes show

she was discharged due to lack of attendance. *Id.* However, it is unclear how this alleged

inconsistency is relevant in any way to Dr. Neims' assessment of Ms. Dunbar's symptoms and

impairments which were based on mental status testing and clinical observation of her

symptoms. This is particularly so given that "'it is a questionable practice to chastise one with a

mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Nguyen v.*

*Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting with approval, *Blankenship v. Bowen*, 874

F.2d 1116, 1124 (6th Cir. 1989)). Accordingly, to the extent any inconsistency exists, the Court

does not find it significant or sufficient to undermine Dr. Neims' evaluation.

The ALJ also discounts Dr. Neims' opinions as based to a large extent on Ms. Dunbar's

self-reports. Tr. 20. A "physician's opinion of disability 'premised to a large extent upon the

claimant's own accounts of [her] symptoms and limitations' may be disregarded where those

complaints have been 'properly discounted.'" *Morgan v. Comm'r Soc. Sec. Admin*, 169 F.3d

595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). However,

an ALJ may not reject an examining physician's opinion by questioning the credibility of a

claimant's complaints, "where the doctor does not discredit those complaints and supports his

ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200

(9th Cir. 2008). Here, Dr. Neims' opinions were all supported by significant findings on mental

status testing as well as his own clinical observations. Tr. 575-86, 759-74, 821-35. Accordingly,

substantial evidence does not support this finding.

The ALJ also indicates that Dr. Neims' evaluations rely heavily on the diagnosis of

personality disorder which the ALJ found was not a medically determinable impairment. Tr. 20.

This was not a sufficient reason, in and of itself, to discount Dr. Neims' opinion. The ALJ did

accept Dr. Neims' diagnoses of bipolar disorder, PTSD and anxiety disorder, as medically determinable impairments. Tr. 15. Moreover, Dr. Neims observed and noted significant symptoms of Ms. Dunbar's mental disorders and opined that those symptoms would significantly impact her ability to function. Unlike a broken limb or other traumatic physical injury, mental health impairments are not always easily categorized. The fact that Dr. Neims classified Ms. Dunbar's mental health symptoms into slightly different or additional categories does not negate the serious mental health symptoms he observed or his assessment of their impact on Ms. Dunbar's functioning in his evaluation. The ALJ offers no valid reason to discount Dr. Neims' clinical observations or findings on mental status testing. Under the circumstances, the Court finds the fact that Dr. Neims included an additional diagnosis of personality disorder, which the ALJ did not accept, does not substantially undermine his opinion regarding the effect of Ms. Dunbar's mental health symptoms on her ability to function.

The ALJ discounted Dr. Neims' 2011 and 2013 opinions, including his opinion that Ms. Dunbar's mental health symptoms would persist with or without marijuana use, as inconsistent with the mental status examinations and observations of treatment providers during periods when Ms. Dunbar was not using marijuana or had reduced her marijuana use. Tr. 19-20, 27. Substantial evidence does not support the ALJ's interpretation of the record. In support of this finding the ALJ points to a few isolated treatment notes, in another part of the opinion, in which Ms. Dunbar showed improved symptoms and she also reported reducing her marijuana use. Namely, the ALJ points to three treatment notes from October 2012, mid-2013, and July 2014, where Ms. Dunbar reported a significant reduction in marijuana use and demonstrated little psychiatric difficulty.[4] Tr. 24 (citing 736, 787-88, 800). However, these isolated treatment notes

---

[4] The Court notes that the ALJ refers to the October 2012 treatment note as "following a period of sobriety." Tr. 24,

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 9

do not reflect the record as a whole as to Ms. Dunbar's functioning without marijuana. Rather, the record as a whole shows a high degree of variability in Ms. Dunbar's mental status whether she is using marijuana regularly or not. For instance, there are also several treatment notes indicating that despite using marijuana regularly Ms. Dunbar exhibited few mental health symptoms as well as several treatment notes reflecting significant mental health symptoms despite a reduction in marijuana use. *See, e.g.*, Tr. 782-82 (stopped using marijuana but assessed as depressed, anxious and hopeless), 841 (drug screen positive for cannabis but presented as calm, friendly and cheerful on mental status exam), 743-44 (cut down on marijuana use, only using very occasionally but presents as tearful, hopeless with anxious mood), (cut down on marijuana, only using very occasionally but presents as tearful, depressed, distracted with dissociative symptoms and rumination, negative thought content). Viewing the record as a whole, the isolated treatment notes selected by the ALJ are insufficient to establish a causal link between Ms. Dunbar's reduced marijuana use and significantly improved mental health symptoms.

Furthermore, Dr. Neims' own examinations indicate the same level of impairment during a period when Ms. Dunbar reported using marijuana daily (in 2011) as when she reported dramatically cutting back on her use to two times per month (in 2013). Tr. 575-86, 759-74. The ALJ's rationale is further undermined by Dr. Neims' 2015 opinion which was submitted for the first time to the Appeals Council after the ALJ's decision and included in the record. Tr. 1-6, 821-35. "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district

787-88. However, it is unclear what the ALJ means here by a "period of sobriety" as there is evidence Ms. Dunbar reported using marijuana both one week and two weeks prior to that treatment note. Tr. 705, 778. To the extent the ALJ intends to define one week as a "period of sobriety" there is similar evidence in the record of Ms. Dunbar abstaining for a similar amount of time but experiencing ongoing significant mental health symptoms. Tr. 825, 763.

court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Here, Dr. Neims' 2015 opinion indicates again that although Ms. Dunbar reported reducing her marijuana use to twice a month, her significant mental health symptoms and level of impairment remained. Tr. 821-35.

Waxing and waning of symptoms is common when considering mental health issues. As the Ninth Circuit has reinforced, in dealing with mental health issues, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). This appears to be what the ALJ did here. Viewing the record as a whole, the fact that the few isolated treatment notes selected by the ALJ reflecting improved mental health symptoms coincided with periods of reduced marijuana use is insufficient to establish that the significant improvement in symptoms was a result of that reduced marijuana use or that Ms. Dunbar would experience sustained significant improvement in her mental health symptoms if she simply stopped using marijuana. Accordingly, substantial evidence does not support the ALJ's finding that Dr. Neims' opinions were inconsistent with the record as a whole of Ms. Dunbar's functioning during periods of sobriety.

In sum, the ALJ erred in discounting Dr. Neims' opinions in evaluating Ms. Dunbar's

functioning without substance abuse.  This error was harmful as the ALJ failed to include all of Dr. Neims' assessed limitations in the RFC, excluding the impact of substance abuse, or in the hypothetical to the VE.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (error is harmless where it is inconsequential to the ultimate nondisability determination).  On remand, the ALJ should reevaluate Dr. Neims' 2011 and 2013 opinions in addition to and in light of Dr. Neims' 2015 opinion.

### 2.    Mark Heilbrunn, M.D.

In April 2011, Dr. Heilbrunn performed a physical evaluation of Ms. Dunbar and opined that she could stand and walk fifteen to twenty minutes at a time and a maximum of four hours in a regular work day limited by her lumbar degenerative disc disease and obesity.  Tr. 603-04.  Dr. Heilbrunn opined that Ms. Dunbar may have some limitations in fine/dexterous movements secondary to her bilateral resting hand tremor.  *Id.*  He opined Ms. Dunbar can sit for at least thirty minutes at a time and a maximum of five to six hours in an eight hour day with periods of postural repositioning secondary to lumbar degenerative disc disease.  *Id.*  He opined Ms. Dunbar had postural limitations of kneeling and crawling and was precluded from working at unprotected heights due to obesity and chronic lumbar pain.  *Id.*

The ALJ gave some weight to Dr. Heilbrunn's opinion and incorporated the reasoning from his prior decision to support his conclusion.  Tr. 27.  In his prior decision, the ALJ discounted Dr. Heilbrunn's standing, walking and sitting limitations because the record contained "little objective medical evidence" to support these limitations, relied heavily on Ms. Dunbar's self-reported symptoms, and was not supported by the totality of the evidence.  Tr. 202.  Substantial evidence does not support these reasons for discounting Dr. Heilbrunn's opinion.  Dr. Heilbrunn personally examined Ms. Dunbar and reviewed her medical records.  Tr.

598-604.  Furthermore, while Dr. Heilbrunn considered Ms. Dunbar's self-reported limitations on sitting, standing and walking, he did so in the context of objective evidence in the form of a 2009 lumbar MRI showing degenerative disc disease with a minor annular tear and neurocompression at the L4-5 level, lumbar lordosis, midline and paraspinous tenderness, stiffness when arising from the seated position, tenderness about the sacral iliac joints, in addition to considering the effect of her obesity.  *Id.*; *see Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.  However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.") (internal citations and quotation marks omitted).  The Court notes that while the objective evidence may not show the most severe level of lumbar impairment, Dr. Heilbrunn also did not impose the most severe functional limitations.  Dr. Heilbrunn did not opine that Ms. Dunbar's lumbar impairment rendered her bedridden or unable to work entirely but found, in addition to obesity, it did impose some modest limitations on Ms. Dunbar's sitting, standing and walking capacity.  The Court cannot say that these limitations were significantly out of proportion with the objective findings or were based to a large extent on Ms. Dunbar's self-reports.  Thus, the ALJ erred in discounting Dr. Heilbrunn's opinion due to a lack of objective medical evidence and as based primarily upon Ms. Dunbar's self-reports.  Furthermore, the ALJ's general and conclusory statement that these limitations were not supported by the "totality of the evidence", without some further explanation, is not sufficiently specific to discount Dr. Heilbrunn's opinion.  *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary

to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim."); *Dean v. Colvin*, 2015 WL 6158874, at *11 (W.D. Wash. Sept. 29, 2015) (finding the ALJ's reasoning was not sufficiently specific when the ALJ fails to adequately explain *how* the doctor's opinions were inconsistent with the longitudinal record). In sum, the ALJ erred in discounting Dr. Heilbrunn's opinion. This error was harmful because the ALJ failed to include all of Dr. Heilbrunn's assessed limitations in the RFC or in the hypothetical to the VE. *See Carmickle*, 533 F.3d at 1162 (error is harmless where it is inconsequential to the ultimate nondisability determination). On remand, the ALJ should reevaluate Dr. Heilbrunn's opinion.

### 3. Mejah Soong, M.D.

Ms. Dunbar also contends the ALJ erred in evaluating Dr. Soong's opinion. Dkt. 11 at 9. The Court disagrees.

Ms. Dunbar points to several observations and symptoms noted by Dr. Soong in her treatment notes including that Ms. Dunbar had a depressed mood/affect, was anxious/tearful for 20 to 30 minutes of the interview, lost track of her thoughts several times and showed fair to poor insight/judgment regarding treatment compliance. Dkt. 11 at 9; Tr. 730. Ms. Dunbar also notes that Dr. Soong diagnosed her with PTSD, bipolar disorder, rule out panic disorder with agoraphobia, history of methamphetamine abuse in remission, cannabis use, rule out abuse, and tobacco use and rated her GAF at 40. *Id.* Ms. Dunbar argues the ALJ erred in failing to acknowledge Dr. Soong's opinion was consistent with Dr. Neims' opinions and Ms. Dunbar's testimony. *Id.* This conclusory argument fails to identify harmful error in the ALJ's analysis of Dr. Soong's opinion. Although Ms. Dunbar recites several observations and symptoms described in Dr. Soong's treatment notes, she fails to identify any functional limitation contained

in Dr. Soong's opinion that the ALJ failed to account for in the RFC or in the hypothetical to the vocational expert (VE).  *See Carmickle*, 533 F.3d at 1162.

Ms. Dunbar argues the ALJ erred in discounting Dr. Soong's Global Assessment of Functioning (GAF) score of 40.  Dkt. 11 at 9.  A GAF score of 31–40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR) (4th ed. 2000).  However, Ms. Dunbar fails to argue or establish that any alleged error in considering the GAF score was harmful.  *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (court may not reverse unless error is harmful, and claimant has burden of showing harm).  As a general matter, a GAF score is not, alone, dispositive of mental disability for social security purposes.  *See McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (citing Revised Medical Criteria for Evaluating Mental Disorders & Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-50765 (Aug. 21, 2000) ("The GAF score does not have a direct correlation to the severity requirements in our mental disorders listings.")).  Moreover, the record here shows that although Dr. Soong assessed a GAF score of 40, she did not opine Ms. Dunbar is disabled and did not set forth functional limitations which the ALJ should have but did not consider which were consistent with a GAF score of 40.  In short, because Ms. Dunbar points to nothing in the record showing Dr. Soong found specific limitations that were not addressed by the ALJ, she has not shown harmful error with respect to the ALJ's treatment of Dr. Soong's GAF scores or opinions.  *See Carmickle*, 533 F.3d at 1162; *Ludwig*, 681 F.3d at 1054.

**4.    Other Evidence**

Ms. Dunbar recites a long list of other medical evidence which she argues supports her

interpretation of the evidence, i.e., that she is disabled.  Dkt. 11 at 9-12.  Ms. Dunbar again

argues the ALJ erred in failing to acknowledge this evidence was consistent with the opinions of

Dr. Neims, Dr. Soong, Dr. Heilbrunn, and Ms. Dunbar's testimony.  Dkt. 11 at 9.  However, this

conclusory argument fails to explain how the ALJ harmfully erred in evaluating, or failing to

evaluate, the recited evidence.  Claims that are unsupported by explanation or authority may be

deemed waived.  *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008)

at * 2 (unpublished opinion) (citing *Northwest Acceptance Corp. v. Lynnwood Equip., Inc*., 841

F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error

waives issue); *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir.

2003) ("We review only issues which are argued specifically and distinctly in a party's opening

brief[] … [a] bare assertion of an issue does not preserve a claim.") (internal citations and

quotation marks omitted); *Ludwig*, 681 F.3d at 1054 (the burden is on the party claiming error to

demonstrate the error and that the error was harmful).  Here, Ms. Dunbar's conclusory

statements are insufficient to establish harmful error and the Court declines to improperly

attempt to manufacture arguments on Ms. Dunbar's behalf.

**B.      Ms. Dunbar's Testimony**

"In assessing the credibility of a claimant's testimony regarding subjective pain or the

intensity of symptoms, the ALJ engages in a two-step analysis."  *Molina*, 674 F.3d at 1112

(citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "First, the ALJ must determine

whether the claimant has presented objective medical evidence of an underlying impairment

which could reasonably be expected to produce the pain or other symptoms alleged."  *Vasquez*,

572 F.3d at 591.  "If the claimant meets the first test and there is no evidence of malingering, the

ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives

'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)). In evaluating the credibility of a claimant's testimony, the ALJ may consider a range of factors including prior inconsistent statements concerning symptoms, as well as the claimant's daily activities. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

Here, the ALJ reasonably discounted Ms. Dunbar's testimony as inconsistent with her demonstrated activities. Tr. 24. Specifically, the ALJ noted that Ms. Dunbar's testimony of severely limiting symptoms was inconsistent with her reported use of public transportation. Tr. 24, 713. Substantial evidence supports this finding. Ms. Dunbar testified at the hearing in September 2012 that she was unable to take public transportation due to her anxiety, inability to be around people on the bus, and fear of having a panic attack. Tr. 53. However, just three months after the 2012 hearing, Ms. Dunbar reported to her provider that she was riding the bus and a few months later again reported using the bus, although she indicated she disliked doing so. Tr. 713, 716. Furthermore, at the 2015 hearing, Ms. Dunbar indicated she had not ridden the bus since the prior hearing in 2012 but that she had ridden it prior to that hearing because she didn't have a vehicle at the time. Tr. 89. The ALJ reasonably found evidence that Ms. Dunbar was able to ride the bus (including her own statements) inconsistent with her testimony that her mental health symptoms were so severe they prevented her from taking public transportation.

Ms. Dunbar presents nothing demonstrating the ALJ's findings lack support in the record. Rather, she argues this activity does not capture the true nature of her limitations and that riding the bus is difficult for her. Dkt. 11 at 13. However, the ALJ may rely upon a claimant's activities as grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Molina*, 674 F.3d at 1113; *Orn v. Astrue*, 495

1 F.3d 625, 639 (9th Cir. 2007) (ALJ may discount a claimant's testimony where her activities

2 contradict her testimony).  This is what the ALJ did here.  The ALJ considered and rejected Ms.

3 Dunbar's testimony that she is disabled on the grounds that Ms. Dunbar's ability to ride the bus

4 is inconsistent with her claims that her anxiety and panic symptoms are so severe she is unable to

5 do so.[5]

6       Accordingly, the ALJ did not err in discounting Ms. Dunbar's symptom testimony.

7 **C.     Lay Witness Testimony**

8       Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's

9 ability to work is competent evidence that the ALJ must take into account.  *Nguyen v. Chater*,

10 100 F.3d 1462, 1467 (9th Cir. 1996).  In order to discount competent lay witness testimony, the

11 ALJ "must give reasons that are germane to each witness," *Dodrill v. Shalala*, 12 F.3d 915, 919

12 (9th Cir.1993).  Here, the ALJ considered the lay testimony of Ms. Dunbar's mother, Donna

13 Dunbar.

14       In March 2012 Donna Dunbar submitted a statement indicating that she saw her daughter

15 "rarely" after March 2009 and saw her about once a month between September 30, 2009 and the

16 time of her statement.  Tr. 403.  She stated that during 2009 her daughter became "homebound"

17 and wouldn't answer her door or the phone.  *Id.*  She stated that Ms. Dunbar isolated herself and

18 would scream at her to go away if she came to check on her.  Tr. 403-08.  She indicated Ms.

19 Dunbar seemed paranoid, thought people were out to get her, did not return calls and forgot

20 appointments with doctors.  *Id.*  She stated Ms. Dunbar is bipolar and would be depressed for

21 _____

22 [5] The ALJ also gave several other reasons for discounting Ms. Dunbar's testimony.  However, the Court need not address these other reasons in detail because, even if erroneous their inclusion is harmless as they do not negate the ALJ's other valid reason for discounting Ms. Dunbar's testimony.  *See Carmickle*, 533 F.3d at 1162 (including an erroneous reason, among other reasons for discounting a claimant's testimony, is at most harmless error if the other

23 reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination).

days or would be in a hurry to go or talk fast, couldn't read books or complete tasks. *Id.* She indicated if Ms. Dunbar had to be somewhere she would need to know when and where in advance and would obsess over having to go and worry about who would be there. *Id.* She stated Ms. Dunbar was on depakote which has helped some with her moods but that while she has been able to care for her baby she still got very depressed or hyper and sometimes could not leave her apartment. *Id.* She stated Ms. Dunbar has had mental health issues since long before finishing high school and had to do a "work at home type class" in order to finish. *Id.* She indicated Ms. Dunbar gets severe neck pain, headaches and back pain which cause her to need to lie down and would cause her to be incapable of functioning. *Id.* She stated Ms. Dunbar would be shaky and drop things. *Id.*

The ALJ reasonably discounted Donna Dunbar's testimony regarding the severity of Ms. Dunbar's physical impairments as inconsistent with objective physical examination findings discussed in the decision. Inconsistency with the medical evidence is a germane reason to discount lay witness testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, none of the medical evidence indicated Ms. Dunbar's physical impairments were as severe and debilitating as her mother indicates i.e. would cause her to be incapable of functioning. The ALJ did not find Ms. Dunbar's headaches to be a severe impairment, noting that the treatment records did not contain consistent complaints of headaches or any significant treatment for the same. Tr. 15. The ALJ also found no severe impairment related to Ms. Dunbar's neck and the Court sees no significant medical evidence or complaints in the record related to any neck impairment. While the ALJ does find Ms. Dunbar's lumbar degenerative disc disease to be a severe impairment, even Dr. Heilbunn, who assesses the most significant physical limitations, does not find this impairment would make Ms. Dunbar incapable of functioning altogether, but

only that she would be modestly limited in her sitting, walking and standing ability. Tr. 598-604.

Accordingly, the ALJ reasonably discounted Donna Dunbar's testimony regarding her

daughter's physical impairments.

However, the ALJ failed to give germane reasons for discounting Donna Dunbar's

testimony regarding her daughter's mental health symptoms. The ALJ discounts Donna

Dunbar's testimony on the grounds that she "did not have much contact with the claimant

between March 2009 and March 2012" and that this weakens the reliability of her statement. Tr.

26. However, Donna Dunbar states the reason her contact with her daughter was infrequent

during this period was due her isolative behavior and refusal to open the door. Thus, the

statements regarding minimal contact are, in and of themselves, potentially reflective of Ms.

Dunbar's mental status during the subject period. Moreover, even if the infrequent contact were

a reason to give Donna Dunbar's statement less weight as to her daughter's longitudinal, day-to-

day functioning during the subject period, it was not a sufficient reason to discount her statement

entirely.

The ALJ also notes that Donna Dunbar did not mention or address her daughter's rather

significant history of drug use that occurred through the same period covered by her statement

and that the statement described Ms. Dunbar's functioning during a period when she admitted to

smoking marijuana daily and also used more serious drugs.[6] Tr. 26. The ALJ further finds

Donna Dunbar's statement "inconsistent with the grossly normal psychiatric observations

recorded in the record when the claimant is not using drugs." *Id.* However, because the ALJ

erred in evaluating the medical evidence as to Ms. Dunbar's functioning without substance

abuse, (i.e. substantial evidence does not support his conclusion that substance abuse was

---

[6] Ms. Dunbar did not admit to smoking marijuana daily or using more serious drugs during the entire period of time covered by Donna Dunbar's statement nor does the record reflect such.

material to the disability determination) these were not valid reasons to discount Donna Dunbar's testimony. Thus, Donna Dunbar's testimony could not properly be discounted as representative only of her daughter's functioning with substance abuse and not in the absence of substance abuse.[7]

In sum, the ALJ erred in discounting Donna Dunbar's lay testimony. On remand, the ALJ should reevaluate Donna Dunbar's statements with respect to her daughter's mental health symptoms and limitations.

**D.      Scope of Review**

In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). The application of the "credit-as-true" rule for a direct award of benefits "is a rare exception" to the ordinary remand rule which

---

[7] It is unclear whether the ALJ also intends to discount Donna Dunbar's statement that her daughter refused to open the door to her on the grounds that her behavior may have been related to her drug use. Tr. 26. However, to the extent the ALJ intends to discount Donna Dunbar's statement on this basis this finding is purely speculative and is further insufficient in light of the fact that the ALJ erred in evaluating the medical evidence of Ms. Dunbar's functioning in the absence of substance abuse.

typically requires remand for further proceedings. *Leon v. Berryhill*, 874 F.3d 1130, 1133 (9th Cir. 2017). "Where ... an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler*, 775 F.3d at 1105.

Here, the Court finds that not all essential factual issues have been resolved. There is other conflicting medical evidence in the record and the record, as it stands, does not compel a finding of disability. Furthermore, there is additional evidence, in the form of Dr. Neims' 2015 opinion which the ALJ did not have the opportunity to evaluate previously and should be considered on remand. *See Harman*, 211 F.3d at 1180 (Where evidence submitted to the Appeals Council for the first time in denying review is found to undermine the ALJ's decision, "[t]he appropriate remedy … is to remand this case to the ALJ; the ALJ may then consider, the Commissioner then may seek to rebut and the VE then may answer questions with respect to the additional evidence."). Accordingly, remand for further proceedings is appropriate in this case.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, in the context of the DAA analysis, the ALJ should: (1) reevaluate Dr. Neims' 2011 and 2013 opinions in addition to and in light of Dr. Neims' 2015 opinion; (2) reevaluate Dr. Heilbrunn's opinion; (3) reevaluate Donna Dunbar's lay testimony with respect to Ms. Dunbar's mental health impairments; (4) reassess and re-determine the RFC; and, (5) proceed with steps four and five with the assistance of VE testimony as necessary.

DATED this 27th day of December, 2017.

John C Coughenour

JOHN C. COUGHENOUR
United States District Judge

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 22